UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | Civil Action |
| Plaintiff, | No. 2:16-cv-49 |
| v. | |
| CACTUS FEEDERS, INC., LUBBOCK NATIONAL BANK, PAUL ENGLER, MICHAEL ENGLER, JACK RHOADES, JERRY MILLER, EUGENE LEMAN, BRADLEY HASTINGS, KEVIN HAZELWOOD, RONALD HARGIS, and CACTUS FEEDERS, INC. EMPLOYEE STOCK OWNERSHIP PLAN, | |
| Defendants. | |

## COMPLAINT

Plaintiff, Thomas E. Perez, Secretary of Labor, United States Department of Labor, brings this action against Defendants Cactus Feeders, Inc., Lubbock National Bank, Paul Engler, Michael Engler, Jack Rhoades, Jerry Miller, Eugene Leman, Bradley Hastings, Kevin Hazelwood, Ronald Hargis, and Cactus Feeders, Inc. Employee Stock Ownership Plan, pursuant to Sections 502(a)(2) and 502(a)(5), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(5), of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), for appropriate equitable and remedial relief under ERISA Sections 409 and 502(a)(5), 29 U.S.C. §§ 1109 and 1132(a)(5), to enjoin violations of the provisions of Title I of ERISA, and to obtain other appropriate relief to redress violations and to enforce the provisions of Title I of ERISA.

## JURISDICTION

1.      Jurisdiction of this action is conferred upon the Court by ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1).

## VENUE

2.      Venue of this action lies in the United States District Court, for the Northern District of Texas, pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

## THE PLAN

3.      Cactus Feeders, Inc. Employee Stock Ownership Plan (Plan) is, and at all times hereafter mentioned was, an employee pension benefit plan within the meaning of ERISA Section 3(2), 29 U.S.C. § 1002(2).  The Plan was established by, and at all times hereinafter mentioned was maintained by, an employer engaged in commerce or in an industry or activity affecting commerce and is subject to Title I including Title I, Part 4 of ERISA pursuant to ERISA Sections 4(a)(1) and 401(a), 29 U.S.C. §§ 1003(a)(1) and 1101(a).  During all times hereinafter mentioned, the Plan has been administered in Amarillo, Texas within the jurisdiction of this Court.

## THE DEFENDANTS

4.      Defendant Cactus Feeders, Inc. is, and at all times hereinafter mentioned was, a Texas corporation doing business and with a principal place of business in Amarillo, Texas, within the jurisdiction of this Court.  At all times hereinafter mentioned, Cactus Feeders, Inc. has been an Employer and Plan Sponsor with respect to the Plan within the meaning of ERISA Sections 3(5) and 3(16)(B), 29 U.S.C. §§ 1002(5) and 1002(16)(B).  Additionally, at all times hereinafter mentioned, Cactus Feeders, Inc. has been a fiduciary and a party in interest with

respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A). At all times hereinafter mentioned, Cactus Feeders, Inc. has also been the Plan Administrator pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

5. At all relevant times, Defendant Lubbock National Bank was a named Trustee to the Plan. Defendant Lubbock National Bank had actual control over the Plan assets, including the authority and discretion to manage, acquire, dispose of and control the assets and investments of the Plan, vote shares of common stock held by the Plan, and evaluate and contract or enter into transactions between itself and another entity or individual for the purpose of acquiring or selling stock of Cactus Feeders, Inc. Accordingly, at all relevant times, Defendant Lubbock National Bank was a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A).

6. Defendant Paul Engler was at all times hereinafter mentioned a director on the Board of Directors and, until 2011, was Chairman of the Board of Directors for Defendant Cactus Feeders, Inc. At all times hereinafter mentioned, Defendant Paul Engler acted on behalf of the Board of Directors and Cactus Feeders, Inc. with respect to the Plan. At all times hereinafter mentioned, Defendant Paul Engler has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration. At all times hereinafter mentioned, Defendant Paul Engler through his position on the Board of Directors had assumed the ability to delegate plan administration power, duties, and responsibilities and had delegated certain

responsibilities to the ESOP Committee in accordance with the Plan documents. At all times hereinafter mentioned, Defendant Paul Engler through his position on the Board also had responsibility for selecting, appointing, and overseeing the ESOP Committee in administering the Plan. During all relevant times, Defendant Paul Engler conducted his job duties concerning the administration of the Plan in Amarillo, Texas, within the jurisdiction of this Court. At all times hereinafter mentioned, Defendant Paul Engler has also been a Plan Administrator as a member of the Board of Directors pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

7. Defendant Michael Engler was at all times hereinafter mentioned a director on the Board of Directors and, since 2011, Chairman of the Board of Directors for Defendant Cactus Feeders, Inc. Since 2004, Defendant Michael Engler was also the Chief Executive Officer of Defendant Cactus Feeders, Inc.. At all times hereinafter mentioned, Defendant Michael Engler acted on behalf the Board of Directors and Cactus Feeders, Inc. with respect to the Plan. At all times hereinafter mentioned, Defendant Michael Engler has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration and At all times hereinafter mentioned, Defendant Michael Engler through his position on the Board of Directors had assumed the ability to delegate plan administration power, duties, and responsibilities and had delegated certain responsibilities to the ESOP Committee in accordance with the Plan documents. At all times hereinafter mentioned, Defendant Paul Engler through his position on the Board also had responsibility for selecting, appointing, and overseeing the ESOP Committee

4

in administering the Plan.  During all relevant times, Defendant Michael Engler conducted his job duties concerning the administration of the Plan in Amarillo, Texas, within the jurisdiction of this Court.  At all times hereinafter mentioned, Defendant Michael Engler has also been a Plan Administrator as a member of the Board of Directors pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

       8.      Defendant Jack Rhoades was at all times hereinafter mentioned a director on the Board of Directors for Defendant Cactus Feeders, Inc. and acted on its behalf with respect to the Plan.  At all times hereinafter mentioned, Defendant Jack Rhoades has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration. At all times hereinafter mentioned, Defendant Jack Rhoades through his position on the Board of Directors had assumed the ability to delegate plan administration power, duties, and responsibilities and had delegated certain responsibilities to the ESOP Committee in accordance with the Plan documents.  At all times hereinafter mentioned, Defendant Jack Rhoades through his position on the Board also had responsibility for selecting, appointing, and overseeing the ESOP Committee in administering the Plan.  During all relevant times, Defendant Jack Rhoades conducted his job duties concerning the administration of the Plan in Amarillo, Texas, within the jurisdiction of this Court.  At all times hereinafter mentioned, Defendant Jack Rhoades has also been a Plan Administrator as a member of the Board of Directors pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

9.  Defendant Jerry Miller was at all times hereinafter mentioned a director on the Board of Directors for Defendant Cactus Feeders, Inc. and acted on its behalf with respect to the Plan. At all times hereinafter mentioned, Defendant Jerry Miller has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration. At all times hereinafter mentioned, Defendant Jerry Miller through his position on the Board of Directors had assumed the ability to delegate plan administration power, duties, and responsibilities and had delegated certain responsibilities to the ESOP Committee in accordance with the Plan documents. At all times hereinafter mentioned, Defendant Jerry Miller through his position on The Board also had responsibility for selecting, appointing, and overseeing the ESOP Committee in administering the Plan. During all relevant times, Defendant Jerry Miller conducted his job duties concerning the administration of the Plan in Amarillo, Texas, within the jurisdiction of this Court. At all times hereinafter mentioned, Defendant Jerry Miller has also been a Plan Administrator as a member of the Board of Directors pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

10. Defendant Eugene Leman was at all times hereinafter mentioned a director on the Board of Directors for Defendant Cactus Feeders, Inc. and acted on its behalf with respect to the Plan. At all times hereinafter mentioned, Defendant Eugene Leman has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration. At all times

hereinafter mentioned, Defendant Eugene Leman through his position on the Board of Directors had assumed the ability to delegate plan administration power, duties, and responsibilities and had delegated certain responsibilities to the ESOP Committee in accordance with the Plan documents.  At all times hereinafter mentioned, Defendant Eugene Leman through his position on The Board also had sole responsibility for selecting, appointing, and overseeing the ESOP Committee in administering the Plan.  During all relevant times, Defendant Eugene Leman conducted his job duties concerning the administration of the Plan in Amarillo, Texas, within the jurisdiction of this Court.  At all times hereinafter mentioned, Defendant Eugene Leman has also been a Plan Administrator as a member of the Board of Directors pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

11.     Defendant Bradley Hastings was at all times hereinafter mentioned a Company Senior Vice-President, Chief Financial Officer, Secretary, Treasurer and member of the ESOP Committee.  At all times hereinafter mentioned, Defendant Bradley Hastings acted on behalf of the ESOP Committee with respect to the Plan.  At all times hereinafter mentioned, Defendant Bradley Hastings has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration. At all times hereinafter mentioned, Defendant Bradley Hastings through his position on the ESOP Committee had the discretion and authority to construe and interpret the Plan as well as the applicable regulations and regulatory rules.  At all times hereinafter mentioned, Defendant Bradley Hastings through his position on the ESOP Committee also had the discretion and authority to settle all questions arising in the administration, interpretation and

application of the Plan document as well as the documents related to the Plan's operation.  At all times hereinafter, Defendant Bradley Hastings through his position on the ESOP Committee handled Plan administration transactions, made decisions for the Plan, and handled compliance matters for the Plan and Plan administration.   At all times hereinafter mentioned, Defendant Bradley Hastings has also been a Plan Administrator as a member of the ESOP Committee pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

12.     Defendant Kevin Hazelwood was at all times hereinafter mentioned a Company Vice-President of Employee Development and Human Resources, Human Resources Director, and member of the ESOP Committee.  At all times hereinafter mentioned, Defendant Kevin Hazelwood acted on behalf of the ESOP Committee with respect to the Plan.  At all times hereinafter mentioned, Defendant Kevin Hazelwood has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration. At all times hereinafter mentioned, Defendant Kevin Hazelwood through his position on the ESOP Committee had the discretion and authority to construe and interpret the Plan as well as the applicable regulations and regulatory rules.  At all times hereinafter mentioned, Defendant Kevin Hazelwood through his position on the ESOP Committee also had the discretion and authority to settle all questions arising in the administration, interpretation and application of the Plan document as well as the documents related to the Plan's operation.  At all times hereinafter, Defendant Kevin Hazelwood through his position on the ESOP Committee handled Plan administration transactions, made

decisions for the Plan, and handled compliance matters for the Plan and Plan administration.  At all times hereinafter mentioned, Defendant Kevin Hazelwood has also been a Plan Administrator as a member of the ESOP Committee pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

13. Defendant Ronald Hargis was at all times hereinafter mentioned a Company Vice-President, Controller, and member of the ESOP Committee.  At all times hereinafter mentioned, Defendant Ronald Hargis acted on behalf of the ESOP Committee with respect to the Plan.  At all times hereinafter mentioned, Defendant Ronald Hargis has been a fiduciary and a party in interest with respect to the Plan within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14) and 1002(21)(A) in that he had and exercised discretionary authority, control and responsibility over Plan management and administration.  At all times hereinafter mentioned, Defendant Ronald Hargis through his position on the ESOP Committee had the discretion and authority to construe and interpret the Plan as well as the applicable regulations and regulatory rules.  At all times hereinafter mentioned, Defendant Ronald Hargis through his position on the ESOP Committee also had the discretion and authority to settle all questions arising in the administration, interpretation and application of the Plan document as well as the documents related to the Plan's operation.  At all times hereinafter, Defendant Ronald Hargis through his position on the ESOP Committee handled Plan administration transactions, made decisions for the Plan, and handled compliance matters for the Plan and Plan administration.   At all times hereinafter mentioned, Defendant Ronald Hargis has also been a Plan Administrator as a member of the ESOP Committee pursuant to Section 3(16)(A)(i), 29 U.S.C. §§ 1002(16)(A)(i), because it is specifically so designated in the Plan documents.

14.     The Plan, as described in paragraph III, above, is joined as a party Defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

## GENERAL ALLEGATIONS

15.     The ESOP was created effective November 1, 1988.  Its assets are held by Cactus Feeders, Inc. Employee Stock Ownership Trust.  The ESOP has other participating employers all of whom are organizationally related to Defendant Cactus Feeders, Inc.

16.     In an April 18, 2010, memorandum from the ESOP Committee to the Board of Directors, the ESOP Committee recommended hiring Lubbock National Bank as an external Trustee to replace the internal trustee the Plan had been using.  According to the memorandum, Lubbock National Bank is a private, nationally chartered bank established in 1917 with multiple branches in Lubbock, Austin, and College Station.  It has clients across the spectrum of industries and in various geographical locations.  In recommending Lubbock National Bank, the ESOP Committee indicated that Christopher Robinson, its Vice-President and Head of Trust Services, would be fulfilling the Trustee duties on behalf of the bank.  The ESOP Committee detailed Christopher Robinson's credentials.   Christopher Robinson is a licensed attorney with experience in ESOP transactions and trustee services.  At that time, Christopher Robinson was trustee for other ESOP companies with plans that had assets in the $150 million to $200 million range.

17. Through the April 30, 2010 Written Consent in Lieu of Special Meeting of the Board of Directors, the Board of Directors appointed Lubbock National Bank as Trustee of the Plan. Cactus Feeders, Inc. and Lubbock National Bank entered into an Engagement Letter effective April 30, 2010.

18. Prior to December 22, 2010, the ESOP owned 157,369.4 shares of the Company, which represented 29.7% of the outstanding shares.

19. On December 22, 2010, the ESOP purchased an additional 375,000 shares for $100 million. After the December 22, 2010 purchase, the ESOP owned 532,369.4 shares, which represented 100% of the outstanding shares of the Company.

20. The purchased shares derived primarily from sellers within the Engel family. The sellers were: Michael Engler, as Trustee of the Michael John Engler and Dalia Anna Engler Revocable Family Trust; Mark A. Engler, as Trustee of the Mark A. Engler Living Trust; Teresa Raizen, as Trustee of the Matthew Engler 2008 Irrevocable Trust; Sara Engler Cady, as Trustee of the Cady Living Trust; Teresa Engler Raizen, as Trustee of the Teresa E. Raizen 2010; Jennifer Engler, as Trustee of the Jennifer L. Engler Living Trust; Michael Engler, as Trustee of the Nathaniel Raizen Living Trust; Michael Engler as Trustee of the Claire Raizen Trust; and Michael Engler, as Trustee of the Benjamin Raizen Trust (collectively referred to as "Sellers").

21. In order to accomplish the December 22, 2010, purchase, the Company and the ESOP entered into the following transactions:

    i. Through the December 8, 2010 Stock Redemption Agreement among the Sellers, Cactus Feeders, Inc., and the ESOP ("Redemption Agreement"), the Company redeemed 372,287 shares of the company common stock from the Sellers on December 22, 2010, for a purchase price of $100 million. The terms of the redemption were as follows: i) Cactus Feeders, Inc. paid the Sellers $16,790,220.98 in cash it borrowed from banks; ii) Cactus Feeders, Inc. sold warrants to the Sellers for a penny per warrant immediately after the ESOP bought its shares that are exercisable into 193,589 shares of common stock, and iii) Cactus Feeders, Inc. issued junior subordinated notes to the Sellers with a face value of $83,209,779.02. The junior subordinated notes had a 15-year term and an interest rate of 3.53% payable semi-annually. The notes require annual principal payments equal to 50% of the Cactus Feeders, Inc.'s Excess Cash Flows as defined in the loan agreement.

    ii. Concurrently, the Company was to loan the ESOP $100 million to purchase 375,000 shares of company common stock from Cactus Feeders, Inc. Cactus Feeders, Inc. and the ESOP entered into the December 22, 2010 ESOP Credit Agreement, which required Cactus Feeders, Inc. to make the loan to the ESOP with an interest rate of 3.53% and a term of 50 years. The ESOP also executed a Non-Recourse Promissory Note.

    iii. The Redemption Agreement imposed an obligation on Cactus Feeders, Inc. and the ESOP to create the Cactus Feeders, Inc. 2010 Stock Option Plan, which would reserve 241,986 shares of the Company common stock for the benefit of key employees and officers of the Company. "Key employee" is defined in the Plan document as any employee or

former employee who was a corporate officer with compensation in excess of $160,000 (as adjusted under Code Section 416(j); is a 5% owner of the Company; or is 1% owner of the Company with compensation of more than $160,000. The Stock Option Plan was adopted on December 31, 2010.

22. Among other things, the Plan document charges the Trustee with the following:

 i. determine if a loan secured by the Trustee on behalf of this Plan is an Exempt Loan,

 ii. determine that the Company Stock purchased by the Trust are Qualifying Company Stock,

 iii. determine that the purchase price paid to purchase Qualifying Company Stock does not violate the prohibited transaction rules, and

 iv. determine the Fair Market Value of any Plan asset in accordance with the Code and ERISA.

23. In preparation for the December 22, 2010 purchase, Lubbock National Bank in its capacity as Trustee:

 i. engaged Wahlgren Consulting, LLC ("Wahlgren") on November 15, 2010, to perform a Valuation Analysis to determine the fair market value of the common stock;

 ii. engaged the BVA Group ("BVA") to prepare a Fairness Opinion; and

 iii. engaged the Principal Financial Group ("Principal") to prepare a Repurchase Liability Study.

24. The Wahlgren Valuation Analysis and the BVA Fairness Opinion were deficient because, in evaluating the ESOP's purchase price, the reports failed to consider, adequately consider or articulate the impact of issuance of warrants to the Sellers, the Stock Option Plan, a lack of marketability discount, and a lack of control discount.

    i. The warrants and Stock Option Plan combined would reduce the ESOP's ownership from 100% to 55% when fully exercised. The evaluations of the ESOP purchase price did not account, in whole or in part, for this dilutive effect.

    ii. Cactus Feeders, Inc. is a closely held company in a niche industry. It does not have a ready market for its shares or for its assets. The evaluations of the ESOP purchase price did not make any adjustments for Cactus Feeder's Inc.'s limited marketability.

    iii. As a term of the December 22, 2010 purchase, the Sellers had an Investor's Right Agreement ("IRA"). The IRA reserves certain rights that would have belonged to the ESOP as the majority stakeholder for the Sellers. The IRA provides for an Investor Representative ("IR"). The IRA prohibits any change to the Chairman of the Board, Chief Executive Officer/President, or Chief Financial Officer/Treasurer unless approved in writing in advance by the IR. The IR has the right to designate one of the five Directors of the Board and the right to appoint one of the two Outside Directors to serve on several corporate committees, including the Nomination Committee for the ESOP Committee. The IRA also prohibits

increasing or decreasing the number of Directors without the consent of the IR.  As a consequence of the IRA, the ESOP cannot exercise the full control of the Company and its operations that would be expected when acquiring 100% of company shares.  The evaluations of the ESOP purchase price did not make any adjustments for this lack of control.

25. Lubbock National Bank, acting through Christopher Robinson, had the requisite knowledge, experience, and education to recognize and address the deficiencies in the Wahlgren Valuation Analysis and the BVA Fairness Opinion.  Reliance on the reports despite the deficiencies was imprudent and constituted a breach of the Trustee's fiduciary duties to the Plan.

26. Lubbock National Bank caused the ESOP to pay in excess of adequate consideration for the shares it purchased from Cactus Feeders, Inc.  Therefore, the purchase was a prohibited transaction in violation of ERISA.

27. The Company and the Board of Directors were aware of the terms of the transactions set forth, above, in paragraph 21.  The directors were advised of the terms through meetings, telephone calls, emails, and documents such as the Redemption Agreement and the BVA Fairness Opinion.  The Company and directors had the requisite knowledge, education, and experience to recognize that the Trustee was causing the ESOP to enter into a transaction for more than adequate consideration.  The Company and directors did not make reasonable efforts under the circumstances to remedy the breaches.

28.     The ESOP Committee members were aware of the terms of the Transaction. Defendant and ESOP Committee member Bradley Hastings was intimately involved in providing and reviewing information for the December 22, 2010 purchase.  The ESOP Committee also set an agenda item to discuss the terms of the redemption of the stock with a company representative.  The ESOP Committee members had the requisite knowledge, education, and experience to recognize that the Trustee was causing the ESOP to enter into a transaction for more than adequate consideration.  The ESOP Committee members did not make reasonable efforts under the circumstances to remedy the breaches.

## ERISA VIOLATIONS

29.     Based on the facts as recited above, Defendant Lubbock National Bank, as fiduciary and Trustee of the ESOP, breached its fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA Section 404(a)(1)(A) and (B) by, among other things:

i.      Relying on the Wahlgren Valuation Analysis without making certain that reliance on the report was reasonably justified under the circumstances;

ii.     Relying on the BVA Fairness Opinion without making certain that reliance on the report was reasonably justified under the circumstances; and

iii.    Causing the ESOP to enter into the purchase of stocks from Cactus Feeder's Inc. for more than adequate consideration.

30.     Based on the facts as recited above, Defendant Lubbock National Bank, as fiduciary and Trustee of the ESOP, breached its fiduciary duties to the ESOP to not cause the plan to engage in a transaction if he knows or should know that such a transaction constitutes a direct or indirect sale or exchange of any property between the plan and a party in interest unless the transaction qualifies for an exemption under ERISA Section 408 in violation of ERISA Section 406(a)(1)(A) by, among other things, causing the ESOP to enter into the purchase of stocks from Cactus Feeder's Inc. for more than adequate consideration.

## FIDUCIARY AND CO-FIDUCIARY LIABILITY

31.     Based on the facts and as a result of the Trustee's fiduciary breaches recited above, the Lubbock National bank caused a loss to the Plan for which it is personally liable in accordance with ERISA Section 409(a).

32.     Based on the facts recited above, Cactus Feeders, Inc., Paul Engler, Michael Engler, Jack Rhoades, Jerry Miller, Eugene Leman, Bradley Hastings, Kevin Hazelwood, and Ronald Hargis are personally liable for the Trustee's breaches as co-fiduciaries in accordance with ERISA Section 405(a)(3) by knowing of such breaches and failing to make reasonable efforts under the circumstances to remedy the breaches.

## PRAYER

WHEREFORE, cause having been shown, plaintiff, Secretary of Labor prays that this Court:

1.      Permanently enjoin Defendants Cactus Feeders, Inc., Lubbock National Bank, Paul Engler, Michael Engler, Jack Rhoades, Jerry Miller, Eugene Leman, Bradley Hastings, Kevin Hazelwood, and Ronald Hargis from violating the provisions of ERISA;

2.     Order Defendants Cactus Feeders, Inc., Lubbock National Bank, Paul Engler, Michael Engler, Jack Rhoades, Jerry Miller, Eugene Leman, Bradley Hastings, Kevin Hazelwood, and Ronald Hargis to restore all losses to the Plan, with interest thereon, resulting from their breaches of fiduciary obligations, to correct all prohibited transactions, and if necessary, to offset any claims or benefits which they may have against or with the Plan against the amount of losses, including lost opportunity costs, resulting from their violations;

3.     Requiring Defendant Lubbock National Bank to disgorge all fees and costs, including legal fees that it or its agents received from Cactus Feeders, Inc., the ESOP or any other source for all services related to the ESOP and any litigation related to its fiduciary breaches alleged herein;

4.     Order Defendants Cactus Feeders, Inc., Paul Engler, Michael Engler, Jack Rhoades, Jerry Miller, Eugene Leman, Bradley Hastings, Kevin Hazelwood, Ronald Hargis to engage independent fiduciaries to be approved in advance by the Court and paid at the Defendants' expense to administer the Plan;

5.     Award plaintiff costs of this action; and

6. Provide such other remedial relief as may be appropriate.

          Respectfully Submitted,

          M. PATRICIA SMITH
          Solicitor of Labor

          JAMES E. CULP
          Regional Solicitor

          ROBERT A. GOLDBERG
          Counsel for ERISA

            s/ TD Davila
          TINA D. DAVILA
          Trial Attorney-in-Charge
          Texas Bar No. 24027549
          Email:  davila.tina.d@dol.gov

          U.S. Department of Labor
          Office of the Solicitor
          525 Griffin Street, Suite 501
          Dallas, TX  75202
          (972) 850-3100
          (972) 850-3101-fax

          Attorneys for Plaintiff.