IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,  )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>CACTUS FEEDERS, INC.; LUBBOCK  )<br>NATIONAL BANK; PAUL ENGLER;  )<br>MICHAEL ENGLER; JACK RHOADES;  )<br>JERRY MILLER; EUGENE LEMAN;  )<br>BRADLEY HASTINGS; KEVIN  )<br>HAZELWOOD; RONALD HARGIS; and  )<br>CACTUS FEEDERS, INC. EMPLOYEE  )<br>STOCK OWNERSHIP PLAN,  )<br>)<br>Defendants.  ) | Civil Action No. 2:16-cv-0049<br><br>Senior Judge Mary Lou Robinson |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

85888515.15

**TABLE OF CONTENTS**

                                                          **Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

I. INTRODUCTION .................................................................................................................. 1

II. STANDARD FOR MOTION TO DISMISS AND DOCUMENTS DEFENDANTS HAVE ATTACHED ............................................................................ 2

III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST LUBBOCK UNDER ERISA §502(A)(2) ................................................................................................. 4

      a. Elements of a Claim under ERISA §§ 502(a)(2) and (a)(5) .................................. 5
      b. The Complaint Fails to State a Claim Under ERISA §502(a)(2) and (a)(5) Against Lubbock ......................................................................................... 7

IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR CO-FIDUCIARY LIABILITY AGAINST THE CO-DEFENDANTS UNDER ERISA §502(A)(2) .......... 13

V. CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alessi v. Raybestos-Manhattan, Inc.*,
　451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) .......................................................... 10

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................................................................. 4

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................................. 4

*Bennet v. Libbey Glass, Inc.*,
　2015 WL 5794523 (W.D. La., Sept. 30, 2015) ........................................................................ 2

*Bennett v. Conrail Matched Sav. Plan Admin. Comm.*,
　168 F.3d 671 (3d Cir. 1999) .................................................................................................... 10

*Carr v. International Game Technology*,
　770 F. Supp. 2d. 1080 (D. Nev. 2011) .................................................................................... 13

*Carter v. Target Corp.*,
　541 Fed. Appx. 413 (5th Cir. 2013) .......................................................................................... 3

*Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*,
　650 F. Supp. 359 (N.D. Ga. 1986) .......................................................................................... 15

*Collins v. Morgan Stanley Dean Witter*,
　224 F.3d 496 (5th Cir. 2000) ................................................................................................ 2, 3

*Collins v. Pension and Ins. Committee of S. Cal. Rock Prods and Ready Mixed
　Concrete Ass'n*,
　144 F.3d 1279 (9th Cir. 1998) ................................................................................................ 10

*Conner v. Mid South Ins. Agency*,
　943 F. Supp. 647 (W.D. La. 1995) .......................................................................................... 15

*Foltz v. U.S. News & World Report, Inc.*,
　663 F. Supp. 1494 (D.D.C. 1987) ........................................................................................ 9, 10

*Franks v. Prudential Health Care Plan, Inc.*,
　164 F. Supp. 2d 865 (W.D. Tex. 2001) .................................................................................... 2

*Gibson v. City of Chicago*,
　910 F.2d 1510 (7th Cir. 1990) .................................................................................................. 4

*In re ING Groep, N.V. ERISA Lit.*,
    749 F. Supp. 2d. 1338 (N.D. Ga. 2010) ............................................................................... 15

*Justice v. Bankers Trust Co., Inc.*,
    607 F. Supp. 527 (N.D. Ala. 1985) ...................................................................................... 15

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ................................................................................................. 7

*Martin v. Feline*,
    965 Ph.D. 660 (8th Cir. 1992) ........................................................................................... 5, 7

*Massachusetts Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .............................................................................................................. 5

*In re McKesson HBOC, Inc. ERISA Lit.*,
    No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal., Sept. 30 2002) ............................. 14

*Perez v. Bruister*,
    54 F. Supp. 3d 629 (S.D. Miss. 2014) ................................................................................... 7

*Perez-Perez v. Int'l Shipping Agency, Inc.*,
    No. 05-2083(FAB), 2008 WL 1776405 (D. Puerto Rico) .................................................. 14

*Smith v. Williams*,
    819 F. Supp. 2d 1264 (M.D. Fla. 2011) .............................................................................. 15

*In re Sprint Corp. ERISA Lit*,
    388 F. Supp. 2d 1207 (D. Kan., 2004) ................................................................................ 15

*Wilson v. Kimberly-Clark Corp.*,
    254 Fed. Appx. 280 (5th Cir. 2007) ...................................................................................... 2

*Young v. Prudential Ins. Co. of Am.*,
    NO. H-07-612, 2007 WL 1234929 (S.D. Tex., April 24, 2007) ........................................... 2

**STATUTES, RULES & REGULATIONS**

29 U.S.C. § 1102(a) ...................................................................................................................... 5

29 U.S.C. § 1102(a)(2) .................................................................................................................. 5

29 U.S.C. §§ 1104, 1106 ............................................................................................................... 5

29 U.S.C. § 1104(a)(1)(B) ............................................................................................................. 5

29 U.S.C. § 1104(a)(1)(D) ............................................................................................................. 9

29 U.S.C. § 1106 ............................................................................................................................ 5

29 U.S.C. §§ 1106, 1108(e) ...................................................................................................... 6

29 U.S.C. §§ 1108(e)(1), 1002(18)(B) ..................................................................................... 6

29 U.S.C. §§ 1132, 1109 ........................................................................................................... 5

29 U.S.C. §§ 1132(a)(2), (a)(5) ................................................................................................ 5

ERISA ............................................................................................................................ *passim*

ERISA § ................................................................................................................................ 5, 6

ERISA § 404 ......................................................................................................................... 5, 6

ERISA §§ 404 and 406 ........................................................................................................ 5, 7

ERISA § 405(a) ........................................................................................................................ 14

ERISA § 405(a)(3) ................................................................................................ 1, 2, 13, 14

ERISA § 406 ......................................................................................................................... 5, 6

ERISA § 408 ............................................................................................................................. 5

ERISA § 408(e) ........................................................................................................................ 6

ERISA § 409 ............................................................................................................................. 5

ERISA § 502(a) ........................................................................................................................ 5

ERISA § 502(a)(2) ......................................................................................................... *passim*

ERISA §§ 502(a)(2) and 502(a)(5) .................................................................................. 5, 6, 7

ERISA § 502(a)(5) ................................................................................................................ 1, 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2

**OTHER AUTHORITIES**

5 C. Wright & A. Miller, Fed. Prac. & Proc. § 1216 (3d ed. 2004) .................................... 4

The Defendants respectfully request that this Court dismiss the Complaint with prejudice. The Complaint fails to state a breach-of-fiduciary-duty claim under ERISA § 502(a)(2) or ERISA § 502(a)(5) against Lubbock National Bank ("Lubbock"), and fails to state a co-fiduciary liability claim under ERISA § 405(a)(3) against the remaining Co-Defendants Cactus Feeders, Inc., Paul Engler, Michael Engler, Jack Rhoades, Jerry Miller, Eugene Leman, Bradley Hastings, Kevin Hazelwood, and Ronald Hargis (the "Co-Defendants").

## I. Introduction.

The Complaint fails to state a claim primarily because the documents Plaintiff relied on in bringing this claim disprove as a matter of law Plaintiff's allegations of alleged breaches of fiduciary duty. Plaintiff's theory is that Lubbock, as trustee of the Cactus Feeders Employee Stock Ownership Plan ("ESOP"), acted imprudently when it relied on third-party reports that valued stock the ESOP purchased from Cactus Feeders, Inc. ("Cactus Feeders" or the "Company"). According to the Complaint, the third-party reports failed to consider or adequately consider three valuation issues, and if those issues had been addressed, then the reports' conclusions about the stock value would have been different.

But the expert reports and the ESOP plan documents – on their very face – disprove Plaintiff's factual allegations as a matter of law. The third-party experts neither ignored nor failed to adequately address the three issues Plaintiff raised in the Complaint; they addressed each in detail and, importantly, in accordance with the ESOP plan documents' instructions as to how those issues *must* be addressed. The third parties fully complied with the ESOP plan documents' instructions and fully considered the three issues identified in the Complaint, and Lubbock did not breach its fiduciary duty in relying on the expert reports.

The Co-Defendants, which include the Company and various directors, officers, and

ESOP Committee members, are named as alleged co-fiduciaries pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3). Under that section, co-fiduciaries can be liable if they had "actual knowledge" of another fiduciary's breach but failed to remedy it. The Complaint alleges that the Co-Defendant's "should have known" of some alleged breach, but imputed or constructive knowledge does not suffice under ERISA. In the absence of factual allegations to show actual knowledge, there is no claim for co-fiduciary liability.

II.     **Standard for Motion to Dismiss and Documents Defendants Have Attached.**

Although a Rule 12(b)(6) motion to dismiss challenges the face of a complaint, the Court may consider documents not attached to the complaint "if they are referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Documents a plaintiff relies on to "assist the plaintiff in establishing the claim" in the first instance cannot be ignored on a motion to dismiss. *Id.* at 499. Where, as here, claims are based on ERISA plan documents, the "ERISA documents defining the plan may be considered in reviewing the motion to dismiss under FED. R. CIV. P. 12(b)(6)." *Franks v. Prudential Health Care Plan, Inc.*, 164 F. Supp. 2d 865, 872 (W.D. Tex. 2001); *Young v. Prudential Ins. Co. of Am.*, NO. H-07-612, 2007 WL 1234929 at *2 (S.D. Tex., April 24, 2007) (considering ERISA plan documents).

Documents also do not have to be "expressly identified" in a complaint to be considered on a Rule 12(b)(6) motion to dismiss. *Bennet v. Libbey Glass, Inc.*, 2015 WL 5794523 at *2 (W.D. La., Sept. 30, 2015); *Wilson v. Kimberly-Clark Corp.*, 254 Fed. Appx. 280, 282 and 286 (5th Cir. 2007) ("[p]laintiffs, by avoiding any mention of a 'plan' in the proceedings, could not avoid the fact that the very severance benefits they claimed had been wrongfully denied were disbursed pursuant to a plan"); *Walch v. Adjutant Gen.'s Dept. of Texas*, 533 F.3d 289, 294 (5th

- 2 -
85888515.15

Cir. 2008) (considering documents referenced in complaint but not attached); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000)(same); *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. 2013) (considering EEOC documents not attached to complaint).

Plaintiff both references in the Complaint and bases claims on ERISA plan documents and documents relating to the December 22, 2010 transaction between Cactus Feeders and the ESOP. These include:

- The ESOP Plan Documents and "documents related to the Plan's operations," which Plaintiff alleges made Cactus Feeders the Plan administrator and other Defendants fiduciaries in the first instance (Cmpl., ¶ 12; ESOP documents, attached as Ex. A, App. Pages 001 – 107, hereto);

- The December 8, 2010 Stock Redemption Agreement, a Stock Option Plan (attached as Ex. B, App. Pages 108 – 224, hereto), certain "warrants" (attached as Ex. C, App. Pages 225 – 239, hereto), a "junior subordinated note" (attached as Ex. D, App. Pages 240 – 251, hereto), a "December 22, 2010 ESOP Credit Agreement" (attached as Ex. E, App. Pages 252 – 282, hereto), and an "Investor's Right Agreement" (attached as Ex. F, App. Pages 283 – 314, hereto), which Plaintiff alleges were necessary "[i]n order to accomplish the December 22, 2010 purchase" and contained the information that the expert analyses allegedly failed to consider (Cmpl., ¶¶ 21-22, 24);

- The "Valuation Analysis" performed by Wahlgren Consulting, LLC ("Wahlgren") (attached as Ex. G, App. Pages 315 – 379, hereto) and "Fairness

Opinion" by BVA Group (attached as Ex. H, App. Pages 380 – 387, hereto), which contained the alleged deficiencies[1] (Cmpl., ¶ 23).

These are the documents that create the alleged fiduciary status of the defendants, that set forth how certain stock-valuation issues had to be approached, and that Lubbock relied upon.

To determine whether the Complaint states a claim, only well-pleaded factual allegations (including facts established by the "central" documents) matter. *Gibson v. City of Chicago*, 910 F.2d 1510, 1521 (7th Cir. 1990). Conclusions are not sufficient; the Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" or it will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). If the factual allegations do not raise a right-of-relief above a "speculative level," then the complaint will be dismissed. *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Fed. Prac. & Proc. § 1216, pp. 235-236 (3d ed. 2004)). The mere possibility that a defendant acted in an unlawful manner, without facts in support, is insufficient to state a claim. *See Twombly,* 550 U.S. at 556; *see also Iqbal,* 129 S. Ct. at 1949. Allegations that are "merely consistent with" a claim, but which do not contain well-pled facts, do not pass muster. *Twombly*, 550 U.S. at 557 (2007).

### III.   The Complaint Fails to State a Claim Against Lubbock Under ERISA §502(a)(2).

The Complaint challenges a December 22, 2010 transaction in which the ESOP bought stock from Cactus Feeders, thereby increasing its ownership from 29.7% to 100%. (Cmpl., ¶18, 19.) The Complaint alleges that three independent advisors created for Lubbock deficient analyses that overvalued the stock. Lubbock imprudently relied on the allegedly deficient analyses when Lubbock approved the transaction, thus causing the ESOP to overpay. (Cmpl., ¶ 26.) This, the Complaint alleges, constituted a breach of Lubbock's fiduciary duty to the ESOP

---

[1]   The Complaint does not challenge the analysis by Principal Financial Group.

under ERISA §502(a)(2). 29 U.S.C. §1102(a)(2).

### a. Elements of a Claim under ERISA §§ 502(a)(2) and (a)(5).

Plaintiff alleges Lubbock violated ERISA § 502(a)(2) and § 502(a)(5) by breaching the fiduciary obligations set forth in ERISA § 404 and causing the ESOP to engage in a "prohibited transaction" under ERISA §406. 29 U.S.C. §§ 1104, 1106 (Cmpl., ¶ 30). ERISA § 404 sets forth the general fiduciary standard under ERISA, which requires a fiduciary to act with certain care, skill, prudence, and diligence."[2] ERISA § 406 is ERISA's general prohibited-transactions provision that prohibits fiduciaries from causing plans to engage in enumerated transactions, unless the transaction is exempt under ERISA § 408. 29 U.S.C. § 1106 ("Except as provided in section 1108 of this title . . .")  As the Eighth Circuit explained, a fiduciary "is not *per se* liable" because a transaction falls within the general prohibitions of ERISA § 406, so long as the transaction is exempt under ERISA § 408. *Martin v. Feline,* 965 Ph.D. 660, 670 (8th Cir. 1992) (emphasis original) ("We disagree that self-dealing and conflicts of interest are per se unlawful conduct by an ESOP fiduciary.")

Because ERISA §§ 404 and 406 do not create rights of action,[3] Plaintiff brought her claims pursuant to ERISA §§ 502(a)(2) and (a)(5). A § 502(a)(2) claim is a breach-of-fiduciary-duty claim. It authorizes claims for legal and equitable relief under ERISA § 409, which, in turn, renders fiduciaries liable for breaches of duties that ERISA imposes on fiduciaries. 29 U.S.C. §§ 1132, 1109. ERISA § 502(a)(5), in contrast, creates a cause of action solely for equitable or injunctive relief in view of violations of ERISA. 29 U.S.C. §§ 1132(a)(2), (a)(5).

---

[2] A fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).
[3] ERISA's exclusive rights of action are found in ERISA §502(a). 29 U.S.C. §1102(a); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (Congress did not authorize causes of action beyond those in ERISA §502(a)).

Despite many differences among these various ERISA sections, the legal framework within which the case must be decided is nearly identical under ERISA §§ 502(a)(2), (a)(5), and the underlying fiduciary duty section in § 404 and prohibited-transaction section in § 406. This is because Lubbock's fiduciary obligations with respect to the ESOP stock transaction are substantially similar under ERISA § 404, the general fiduciary-duty section, and under a prohibited-transactions exemption in ERISA § 408(e) for ESOP stock purchases. Under ERISA § 404, Lubbock was required to act with certain care, skill, prudence, and diligence in approving the ESOP transaction. Under ERISA § 408(e), the ESOP's purchase of stock from the company is not prohibited if the purchase was for "adequate consideration," which ERISA defines as:

> . . .fair market value of the asset *as determined in good faith* by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary.

29 U.S.C. §§ 1108(e)(1), 1002(18)(B) (emphasis added). Like ERISA § 404, ERISA § 408(e)'s "adequate consideration" test focuses on the fiduciary's *conduct*. The "adequate consideration" analysis does not test the *amount* a fiduciary agreed the ESOP would pay for stock – amounts are subject to reasonable disagreement, negotiation, ranges of potential values, etc. – but the *process* the fiduciary engaged in when the fiduciary determined the value to be paid. As the Fifth Circuit in *Donovan v. Cunningham* explained, "adequate consideration" is concerned with the trustee's good-faith to determine value. 716 F.2d 1455, 1465 (5th Cir. 1983); 29 U.S.C. §§ 1106, 1108(e). The test "is one of conduct, and not a test of the result . . ." *Donovan*, 716 F.2d at 1465 (citations omitted). A court "is to ask if the price paid is the fair market value of the asset as determined in good faith . . . it is not to redetermine the appropriate amount for itself *de novo*." *Id.* (emphasis original, citations omitted).

Taking these provisions together, Plaintiffs' claim under ERISA § 502(a)(2) and (a)(5),

for breaches of ERISA §§ 404 and 406, challenges Lubbock's process. Even if the Secretary of Labor were to disagree with the amount the ESOP paid, that alone would not render any Defendant liable. The Complaint, on its face, must allege facts that establish at least a *prima facie* case[4] that Lubbock acted imprudently and that Lubbock did not arrive at its valuation conclusions after a good-faith process. *Perez v. Bruister*, 54 F. Supp. 3d 629, 660 (S.D. Miss. 2014) (court does not test the amount, but asks if the determination was arrived at prudently and in good faith).

Plaintiff's § 502(a)(2) claim also requires Plaintiff to plead and prove causation and loss resulting from alleged breaches of fiduciary duty. *See, e.g., Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir. 2007) (ERISA §502(a)(2) authorizes claims for "losses to the plan so caused . . .")

      **b. The Complaint Fails to State a Claim Under ERISA §502(a)(2) and (a)(5) Against Lubbock.**

The Complaint fails to allege facts to establish a breach of fiduciary duty. It alleges that on April 30, 2010, the Company's Board of Directors, upon recommendation of an ESOP Committee, appointed Lubbock as external ESOP trustee (the Company had an internal trustee). (Compl., ¶¶ 15-17.) In preparation for the ESOP's potential upcoming stock purchase from the Company, Lubbock engaged Wahlgren to perform a Valuation Analysis, BVA to perform a Fairness Opinion, and Principal Financial Group to perform a Repurchase Liability Study, which each prepared. (Compl., ¶ 23.)

Plaintiff alleges that Wahlgren and BVA's analyses were deficient because they "failed to

---

[4] Although there appears to be a split among Circuit Courts as to which party ultimately must prove loss/no loss resulting from a breach of fiduciary duty, Plaintiff has the obligation to at least make "a prima facie case" of loss. *Id.* at 219-20 (citing cases); *Martin v. Feilen,* 965 F.2d 660, 671 (8th Cir. 1992) ("once the ERISA plaintiff has proved a breach of fiduciary duty and a prima facie case of loss to the plan or ill-gotten profit to the fiduciary, the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by, or his profit was not attributable to, the breach of duty.")

consider, adequately consider, or articulate the impact of" of three things: (1) a Stock Option Plan and warrants that Cactus Feeders issued to certain "key" employees that, if ever exercised, would reduce the ESOP's ownership from 100% to 55%; (2) Cactus Feeders' "limited marketability" as a closely held company; and (3) a "lack of control discount," because even though the ESOP would be acquiring 100% of Cactus Feeders, an Investors Rights Agreement ("IRA") required approval of an Investor Representative ("IR") before making certain changes to Cactus Feeders' Board of Directors. The Complaint alleges the ESOP would not be obtaining "full control" as expected when acquiring 100% of a company's shares. (Cmpl., ¶ 24.)

With respect to (3) above, which is the allegation that the experts "failed to consider" or adequately consider a "lack of control" discount, that fails to state a claim because the ESOP plan documents prohibited a lack of control discount. The ESOP Plan documents stated:

[*See* Ex. 1, App. Pages 388 – 389, ¶(a).] [5]

The ESOP documents instructed Lubbock to direct Wahlgren that the valuation must *not* adjust the price because shares have a minority, or "lack of control," position. Wahlgren's report states that Lubbock and Wahlgren complied:

[*See* Ex. 1, App Page 389, ¶(b).]

Plaintiff might argue that Lubbock had a fiduciary duty to require Wahlgren and BVA to ignore the ESOP plan documents and apply some minority position, lack of control adjustment, but this is wrong as a matter of law. The general rule under ERISA is that fiduciaries must follow plan documents, unless doing so would be inconsistent with provisions in ERISA. 29

---

[5] Defendants have filed a motion for leave to file exhibits under seal. In order to maintain the confidentiality of the exhibits, the quoted language is set forth in Exhibit 1, App. Pages 388 – 390, hereto, which is one of the exhibits Defendants request leave to file under seal.

In addition, this is the version of the plan that was in effect at the time of the transaction. The ESOP plan documents were amended after the 2010 transaction, but they still prohibit a reduction on the basis of a minority interest. (ESOP Plan, Ex. A, App. Page 022, § 1.43 (2010)).

U.S.C. § 1104(a)(1)(D). There is no ERISA provision that voids the ESOP plan documents' requirement that there be no minority-position discount, because "nothing in ERISA speaks to the amount or method of calculating benefits due plan beneficiaries. Rather, those determinations are left in the hands of the 'private parties creating the plan.'" *Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494, 1516 (D.D.C. 1987), *quoting Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981).

Courts also have rejected similar arguments by the DOL that ERISA requires particular valuation methods and flatly prohibits others. In *Donovan*, an ESOP acquired a less-than-controlling amount of stock, but paid a price determined by a valuation that considered the stock as a controlling block. (716 F.2d 1472-73.) The Secretary of Labor argued that a minority discount should have been applied because an IRS Revenue Ruling, which applied to valuations for estate and gift tax purposes, stated that discounts "may" be appropriate when valuing a minority interest of stock or stock with limited marketability. *Id.* at 1473. "[W]e do not think a court should require fiduciaries to follow a specific valuation approach as a matter of law . . ." Id. In addition, the Court noted several times in its Opinion that ERISA's definition of "adequate consideration" specifically authorized the Secretary of Labor to promulgate valuation regulations, but "the Secretary has never promulgated" any. *Id.* Without specific rules requiring control adjustments, "[t]he standard [fiduciaries] must follow remains one of prudence," and if "more specific rules are needed, the better – and fairer – approach is to inform fiduciaries of them beforehand by regulation." *Id. see also Foltz*, 663 F. Supp. at 1516 (rejecting idea that ERISA directs a particular valuation method); *see also Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677 (3d Cir. 1999) ("ERISA does no more than protect the benefits that are due to an employee under a plan."); *Collins v. Pension and Ins. Committee of S.*

*Cal. Rock Prods and Ready Mixed Concrete Ass'n*, 144 F.3d 1279, 1282 (9th Cir. 1998) (a fiduciary does not have an obligation to ignore plan documents simply to increase the amount of benefits.)

The Complaint's additional allegation that the expert reports were inadequate because the ESOP would be obtaining less than complete control is also factually inaccurate. (Cmpl., ¶ 24.) The IRA states that of the five directors, the ESOP had the right to appoint four, and the IR may designate only one (and two must be independent Outside Directors).[6] Per the Bylaws, a majority (3/5) of directors may transact business.[7] The supposed "lack of control" does not exist in the first place.

Wahlgren actually went the additional step of explaining to Lubbock that a control *premium* (as opposed to a minority discount) also would not be required:
[*See* Ex. 1, App. Page 389, ¶(c).] Contrary to the Complaint's allegations that a minority position, lack of control discount was not considered, Wahlgren complied fully with the plan documents and evidenced an extremely prudent valuation process. Lubbock breached no fiduciary duty in relying on Wahlgren's analysis.

With respect to (2) above, which is the allegation that the expert analyses "did not make any adjustment for Cactus Feeder's Inc.'s limited marketability," this fails to state a claim for breach of fiduciary duty. (Cmpl., ¶ 24(ii).) Wahlgren's Valuation Report fully considered the marketability issue and dutifully reported on many reasons why it was not required:
[*See* Ex. 1, App. Page 389 – 390, ¶(d).] The Complaint ignores this analysis, instead suggesting that a marketability adjustment is somehow flatly required as a matter of law. That is untrue. ERISA requires prudence, and Wahlgren provide an extremely comprehensive analysis that set

---

[6] *See* 8.1(d) of the IRA; Second Amended and Restated Bylaws of Cactus Feeders, Inc., Section 1.14 (defining Outside Director).
[7] Second Amended and Restated Bylaws, Section 4.9.

forth *six* reasons why a marketability discount was not applied: (1) the put right; (2) the Company is highly liquid; (3) the Company's historic and projected financial ability to redeem ESOP stock each year; (4) the ESOP receives a portion of tax related distributions from the Company; (5) in their opinion, the Company would purchase shares from the ESOP gradually; and (6) the total value of stock equals the net asset value. As a matter of law, it was reasonable for Lubbock to rely on Wahlgren's well-supported analysis, even if Plaintiff may disagree with the conclusion.

With respect to (1) above, which is the allegation that the Analysis and Fairness Opinion failed to consider or adequately consider options and warrants that, if exercised for stock, had the potential to dilute the ESOP from 100% ownership of the Company to 55% ownership of the Company, this is also inaccurate on its face. BVA's Fairness Opinion, which opines on the fairness of the ESOP's stock purchase, states that BVA considered the options and warrants as factors in rendering its fairness opinion. (BVA Opinion, Ex. H, App. Page 381.) BVA's opinion on the fair market value of the warrants states that BVA considered a particular "financial analysis" that Principal Financial Group prepared that specifically discussed the impact of the Redemption Agreement. (BVA Opinion, Ex. H, App. Page 382, Due Diligence ¶ 7.) BVA wrote that it "analyzed the impact of the sale of the [warrants] and [Stock Option Plan]." (BVA Opinion, Ex. H, App. Page 383, ¶ 6.) This issue was not ignored, and it was not inadequately considered.

The Complaint is nothing more than a superficial challenge not to the process Lubbock engaged in or Lubbock's general fiduciary obligation to act prudently, but to particular deal terms. Even then, the factual allegations are disproven by the documents the Complaint alleges were inadequate. The third-party experts considered each of the issues Plaintiff raises and, in

their expert opinions, reached their conclusions that were both consistent with the Plan documents and supported by the analyses they conducted. Lubbock was prudent when it relied on Wahlgren's and BVA's analyses.

### IV. The Complaint Fails to State a Claim for Co-Fiduciary Liability Against the Co-Defendants Under ERISA §502(a)(2).

The Complaint alleges that the Co-Defendants are liable as supposed co-fiduciaries[8] under ERISA §405(a)(3), 29 U.S.C. § 1105(a)(3), which states:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> * * *
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

A co-fiduciary claim depends on a breach of fiduciary duty by another fiduciary. *See, e.g., Carr v. International Game Technology*, 770 F. Supp. 2d. 1080, 1096 (D. Nev. 2011) (must be a breach of fiduciary duty in order to state a claim for co-fiduciary liability). Because the Complaint fails to state a claim against Lubbock, it fails to state a claim against the Co-Defendants.

It also fails to allege a co-fiduciary claim because it does not allege that any Co-Defendant had actual knowledge of any alleged breach itself. The Complaint alleges that the Co-Defendants knew of the *terms of the transaction*[9] (not of any alleged breach of fiduciary duty)

---

[8] Defendants dispute that the Co-Defendants were fiduciaries with respect to the allegations in the Complaint.

[9] The Complaint also alleges that Co-Defendant Hastings "was intimately involved in providing and reviewing information for the December 22, 2010 purchase." (Compl., ¶ 28.) It alleges that the "ESOP Committee also set an agenda item to discuss the terms of the redemption of the stock with a company representation." (Compl., ¶ 28.) These allegations do nothing more than allege that Co-Defendants might have been aware of the details of the transaction and do not allege facts to establish actual knowledge of the breach.

- 12 -

and pleads a constructive-knowledge theory – namely that the Co-Defendants "had the requisite knowledge, education, and experience to recognize that the Trustee was causing the ESOP to enter into a transaction for more than adequate consideration." (Cmpl., ¶¶ 27, 28.) Knowledge of a transaction does not mean knowledge of a breach; if that were the case, nearly every fiduciary would be liable as a co-fiduciary simply because she wanted to understand what was involved in a transaction. *In re McKesson HBOC, Inc. ERISA Lit.*, No. C00-20030RMW, 2002 WL 31431588 at *17 (N.D. Cal., Sept. 30 2002) (dismissing §405(a) claim with leave to amend if plaintiffs "identify the breaches of fiduciary duty, the defendants with knowledge of the breaches, how more specifically each defendant failed to take reasonable efforts to remedy the breach, and identify what acts the specific defendants took to conceal information"). The "[m]ere assertion that [a co-fiduciary] must have had some knowledge of the improprieties of" does not meet the requirements of ERISA §405(a)(3). *Perez-Perez v. Int'l Shipping Agency, Inc.*, No. 05-2083(FAB), 2008 WL 1776405 at *4 (D. Puerto Rico). A plaintiff does not state a co-fiduciary liability claim under ERISA §405(a) merely by allegation that some defendants "through their high ranking positions . . . knew or should have known that the Company's stock was an imprudent investment." *In re ING Groep, N.V. ERISA Lit.*, 749 F. Supp. 2d. 1338, 1351 (N.D. Ga. 2010).

A co-fiduciary claim requires factual allegations to show that the co-fiduciaries had actual knowledge of the ***breach***, not just knowledge of the transaction. *See Smith v. Williams*, 819 F. Supp. 2d 1264, 1283 (M.D. Fla. 2011) (dismissing claims for failure to plead actual knowledge of the other's breach); *Conner v. Mid South Ins. Agency*, 943 F. Supp. 647, 661 (W.D. La. 1995) (co-fiduciary must have actual knowledge of the breach in order to potentially be liable); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*, 650 F. Supp. 359, 369

(N.D. Ga. 1986) ("Liability for such a breach of fiduciary duty is extended to a cofiduciary [sic] only if he knowingly participated in the breach or had knowledge of the other's breach …"); *Justice v. Bankers Trust Co., Inc.*, 607 F. Supp. 527, 535 (N.D. Ala. 1985) (same); *In re Sprint Corp. ERISA Lit*, 388 F. Supp. 2d 1207, 1230, 1237 (D. Kan., 2004) (merely reciting statute's actual knowledge requirement is, by definition, conclusory pleading that does not state a claim).

### V. **Conclusion.**

For the reasons set forth herein, Defendants respectfully request that this Court dismiss the Complaint with prejudice.

Dated: November 14, 2016    Respectfully Submitted,

By: /s/    *Theodore M. Becker*

Theodore M. Becker, Illinois State Bar No. 0151262
Richard J. Pearl, Illinois State Bar No. 6275676
DRINKER, BIDDLE & REATH LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
(312) 569-1000 – Telephone
(312) 569-3000 – Fax
Theodore.becker@dbr.com – Email
Richard.pearl@dbr.com – Email

and

Shawn D. Twing, Texas State Bar No. 00798008
MULLIN HOARD & BROWN, LLP
P.O. BOX 31656
Amarillo, Texas 79120
(806) 372-5050 – Telephone
(806) 372-5086 – Fax
stwing@mhba.com – Email

**Attorneys for Defendants**

85888515.15

## CERTIFICATE OF SERVICE

I hereby certify that, on November 14, 2016, I electronically filed the foregoing document with the court's electronic filing system, and that a true and correct copy was served on the parties below through the electronic case filing system since the attorney for Plaintiff is registered and the Notice of Electronic Filing indicates that he received said notices:

> Tina D. Avila
> US Department of Labor – Office of the Solicitor
> 525 S. Griffin Street, Suite 501
> Dallas, TX 75202
> Attorney for Plaintiff

Dated: November 14, 2016                              Respectfully Submitted,

                                                      By: /s/      *Theodore M. Becker*