IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, | ) | |
| United States Department of Labor, | ) | Civil Action |
| | ) | |
|       Plaintiff, | ) | No. 2:16-cv-49 |
| | ) | |
| v. | ) | |
| | ) | |
| CACTUS FEEDERS, INC., LUBBOCK | ) | |
| NATIONAL BANK, PAUL ENGLER, | ) | |
| MICHAEL ENGLER, JACK RHOADES, | ) | |
| JERRY MILLER, EUGENE LEMAN, | ) | |
| BRADLEY HASTINGS, KEVIN | ) | |
| HAZELWOOD, RONALD HARGIS, | ) | |
| and CACTUS FEEDERS, INC. | ) | |
| EMPLOYEE STOCK OWNERSHIP PLAN, | ) | |
| | ) | |
|       Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

I.   BACKGROUND ...................................................................................................... 4

II.  LEGAL FRAMEWORK ........................................................................................ 5

III. PLAINTIFF'S CLAIMS HAVE "PLAUSIBILTY" ........................................... 6

   A.  The Transaction ............................................................................................... 7

   B.  The  ERISA Violations .................................................................................... 9

   C.  Lubbock National Bank's Fiduciary Breach and Liability .......................... 12

   D.  Co-Fiduciary Liability ................................................................................... 12

IV.  PLAINTIFF HAS MET HIS PLEADING BURDEN  AND IS ENTITLED TO
PROCEED ................................................................................................................ 14

   A.  Plaintiff Has Provided the Short and Plain Statement Required by Federal Rule of
Civil Procedure 8(a) ......................................................................................... 14

   B.  Defendants' Efforts to Attack the Merits is Premature ................................. 15

     i.   Courts in the Fifth Circuit are not Required  to Consider Exhibits Attached to
Motions to Dismiss ............................................................................................ 15

     ii.  Expert Testimony is Needed to Consider the Merits of the Case ............................ 17

     iii. Plaintiff Would Require Discovery to Respond to Defendants' Exhibits ............... 18

V.  CONCLUSION ...................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................... 4, 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. 5, 6

*Campbell v. Wells Fargo Bank,* 781 F.2d 440 (5th Cir.1986) ..................................... 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 18

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ................... 6, 15

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957) .................................................... 5

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir.) .......................................................... 10

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) ..................................... 10, 12

*Genuine Parts Co. v. FTC*, 445 F. 2d 1382 (5th Cir. 1971) ...................................... 17

*Howard v. Shay*, 100 F.3d 1484 (9th Cir. 1998) ....................................................... 10

*In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) ................... 14

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045 (5th Cir.1982) ............. 5

*Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242 (5th Cir. 1997) ................................ 5

*Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915 (N.D. Ill. 1998) ................. 10

*Oklahoma Press Publishing Co. v. Walling* , 327 U.S. 186 (1946) ............................ 17

*Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008) ....................................... 16

*Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98 (2d Cir. 1998) ............................ 13

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061 (5th Cir.1994) ...................... 6

*U.S. v. Expert Car Care, Inc.*, 2008 WL 4500220, *1 (M.D. Fla. 2008)..................... 5

**Statutes**

29 U.S.C. Section 1104(a)(1)(A) ................................................................................ 9

29 U.S.C. Section 1104(a)(1)(B) .............................................................................. 10

29 U.S.C. Section 1106(a)(1)(A) .............................................................................. 10

29 U.S.C. Section 1108(e) ........................................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 6

Fed. R. Civ. P. 12(d) ........................................................................................... 15, 18

Fed. R. Civ. P. 8(a)(2)................................................................................................ 5

COMES NOW Plaintiff, Thomas E. Perez, Secretary of Labor, United States Department of Labor and files this Response to Defendants' Motion to Dismiss with a brief in support. As Plaintiff will show, Plaintiff pled sufficient facts in his Complaint to allow the Court to draw an inference that the Employee Retirement Investment Security Act (ERISA) was violated, fiduciary breaches occurred, and the Cactus Feeders, Inc. Employee Stock Ownership Plan (ESOP or Plan) sustained losses for which the fiduciaries are liable. Since Plaintiff's allegations, claims, and requests for relief have plausibility, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied in its entirety.

## I.  BACKGROUND

Plaintiff filed the Complaint in this matter on March 10, 2016. *See* Doc. No. 1. The heart of the Complaint is that the Cactus Feeders, Inc. Employee Stock Ownership Plan (ESOP) paid too much for the stock it purchased in the December 22, 2010 transaction. As a result, the Defendants, as fiduciaries to the ESOP, breached their fiduciary duties to the Plan and violated ERISA, causing the Plan to sustain losses for which the fiduciaries are liable. In the nineteen-page Complaint, Plaintiff set forth the claims and allegations that gave rise to this action, detailing facts known at the time which support those claims and allegations, in conformance with Federal Rule of Civil Procedure 8(a). *See* Fed. R. Civ. Pro. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679, 129 S. Ct. 1937, 1949-50 (2009). Plaintiff did not attach any documents to the Complaint.

On November 14, 2016, Defendants timely filed Defendants' Motion to Dismiss (Motion). In support of Defendants' Motion, Defendants attached documents that they argue show that the Complaint should be dismissed as a matter of law. As discussed below,

Defendants prematurely attempt to delve into the merits of the dispute.  Based solely on the facts alleged in the Complaint and in accordance with the law, the Court can draw an inference that Plaintiff's allegations have occurred and that Defendants may be liable for the fiduciary breaches and Plan losses.  Therefore, there are sufficient facts within the Complaint for the Plaintiff to move forward with this action.

## II.  LEGAL FRAMEWORK

All that is required by Federal Rule of Civil Procedure 8(a)(2) is that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).  The Federal Rules of Civil Procedure do not require "ultimate" or "material facts" at the pleading stage.  *U.S. v. Expert Car Care, Inc.*, 2008 WL 4500220, *1 (M.D. Fla. 2008).  In the Fifth Circuit, "[a] motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."  *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (some citation information omitted).

It is well established that to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 570). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 570). The plausibility requirement outlined by the U.S. Supreme Court "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994) ("In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact."). Asking for plausible grounds, however, does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *See Twombly*, 550 U.S. at 556. Furthermore, in considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments. Fed. R. Civ. P. 12(b)(6); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

## III.  PLAINTIFF'S CLAIMS HAVE "PLAUSIBILTY"

Plaintiff easily meets his burden to show that his claims in the Complaint have plausibility. To prevail, Plaintiff must only have alleged sufficient facts to show that, with all facts taken as true, this Court can draw an inference that the ESOP overpaid for the stock it acquired; Defendant

Lubbock National Bank breached its fiduciary duties when it caused the ESOP to overpay for the

stock; the co-fiduciaries had knowledge of the breaches but took no reasonable steps to stop or

correct the breaches; and the fiduciary breaches (whether direct or as co-fiduciary) caused the

Plan's losses.  Plaintiff's complaint succinctly identifies the aspects of the transaction that

underlie the fiduciary breaches and resulting Plan losses—warrants, stock options, control, and

marketability.

## A.  <u>The Transaction</u>

Plaintiff has pled sufficient facts concerning the transaction to support his claims.  As

referenced in paragraphs 18-21 of the Complaint, the December 22, 2010 transaction that

purported to make the ESOP 100% owner[1] of Defendant Cactus Feeders, Inc. was comprised of

two interlocking steps.  The company, Defendant Cactus Feeders, Inc., purchased 372,287 shares

from nine selling shareholders that were part of one founding family for $16,790,220.98 in cash

and a junior subordinated note of $83,209,779.02 for a total of $100 Million.  Cactus then

immediately sold those shares to the ESOP for a non-recourse promissory note of $100 Million.

Without delving too far into the details, which would not be helpful at this stage of the litigation

and that will, in part, require expert testimony to decipher, analyze, and explain, there are key

restrictions that were instituted as part of the transaction that gave rise to the Complaint.

The first key restriction is the Investor Rights Agreement (IRA), referenced in paragraph

24 of the Complaint.  The IRA placed several restrictions that are incongruent with 100%

ownership of the company and its assets, which the December 22, 2010 transaction was

purported to transfer to the ESOP.  Paragraph 24(iii) of the Complaint discusses the IRA and

---

[1]      As stated in paragraph 18 of the Complaint, prior to the transaction, the ESOP already

recites some of the restrictions that support Plaintiff's allegations that: "the ESOP cannot exercise the full control of the Company and its operations that would be expected when acquiring 100% of company shares."[2]  Most pertinent at this time, IRA Section 5.1 requires the ESOP to obtain the approval of the an investor representative (IR) before selling the company (or a majority share of the stocks); spending more than $10 Million on capital expenditures in a 12 month period; entering into any debt or instrument that would encumber any cattle feed lot after December 31, 2019; and reserving more than 241,986 shares of common stock to be used for the Stock Option Plan.  IRA Section 5.2 also requires the ESOP to remain an S Corporation.  IRA Section 8.1 restricts the ESOP from increasing or decreasing the number of Directors on the Board of Directors without approval of the IR, and IRA Section 8.2 requires that the ESOP maintain certain committees that affect the day-to-day operations of the company and on which the sellers have representation.  Additionally, IRA Section 9.1 prohibits the ESOP from changing the Chairman of the Board, Chief Executive Officer/President, or Chief Financial Officer/Treasurer without advanced written approval of the IR.  IRA Section 9.5 similarly prohibits the ESOP from approving a new trustee without the IR's written consent.  Taken in total, because of the restrictions in the IRA, the Court could draw an inference that the ESOP did not actually purchase the entirety of the company and its assets and is unable to run the company independent of the sellers.

The second key restriction is the grant of warrants and stock options, as referenced in paragraphs 21 and 24 of the Complaint.  Taken together, the Court could draw an inference that

owned approximately 29.7% of the company stock.

[2] The Complaint did not recite every restriction that could impact the ultimate issues to be decided in the case.  If the Court determines that some of the clarification provided here should

the warrants and stock options prevented the ESOP from having independent access to 45% of its shares.  The warrants were given to the original selling shareholders and entitled those sellers to exercise 193,589 shares of common stock at a future date.  Since the warrant obligations were entered into between the company and the sellers as part of the first step of the transaction before the ESOP took possession of the stock, the ESOP itself is unable to make its own independent decisions about the grant of warrants.

Similarly, the stock option plan was also a term of the sale of the stock from the original sellers to the company.  As part of the December 22, 2010 transaction, the company became obligated to institute a stock option plan that reserved 241,986 shares for key personnel, defined as any employee or former employee who was a corporate officer with compensation in excess of $160,000; is a 5% owner of the Company; or is 1% owner of the Company with compensation more than $160,000.  Again, the ESOP was unable to exercise its own independent judgment with regard to that stock.

## B.  The  ERISA Violations

Plaintiff has met his burden of pleading plausible ERISA violations.  Paragraphs 29 and 30 of the Complaint allege violations of ERISA Sections 404(a)(1)(A) and (B) and 406(a)(1)(A).  ERISA Section 404(a)(1)(A) requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan . . . ." 29 U.S.C. Section 1104(a)(1)(A).  Trustees must act "with an eye single to the interests of the participants and beneficiaries" of the plan.  *Donovan v.*

be included in the Complaint, Plaintiff would request the opportunity to amend.

*Bierwirth*, 680 F.2d 263, 271 (2d Cir.), *cert. denied*, 459 U.S. 106 (1982).  ERISA Section

404(a)(1)(B) also  requires that "a fiduciary shall discharge his duties with respect to a plan . . .

with the care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent man acting in a like capacity and familiar with such matters would use in the conduct of

an enterprise of a like character and with like aims . . . ."  29 U.S.C. Section 1104(a)(1)(B).

Subjective good faith is not a defense to a charge of imprudence.  *See Donovan v. Cunningham*,

716 F.2d 1455, 1467 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984).

  ERISA Section 406(a)(1)(A) further provides that "[e]xcept as provided in section

408… [a] fiduciary with respect to a plan shall not cause the plan to engage in a

transaction, if he knows or should know that such transaction constitutes a direct or

indirect… [s]ale or exchange, or leasing, of any property between the plan and a party in

interest."  29 U.S.C. Section 1106(a)(1)(A).  In order for a stock purchase to qualify for

the exemption under ERISA Section 408, the ESOP would have had to pay no more than

adequate consideration.  Specifically, ERISA Section 408(e) provides, in relevant part

that: "Sections 406 and 407 shall not apply to the acquisition or sale by a plan and

qualifying employer securities…if such price is for adequate consideration."   29 U.S.C.

Section 1108(e).  At all times, the Defendants retain the burden to demonstrate that

ERISA provides an exemption for their transaction.  *See Montgomery v. Aetna Plywood,*

*Inc.*, 39 F. Supp. 2d 915, 919, 935 (N.D. Ill. 1998); *Howard v. Shay*, 100 F.3d 1484, 1489

(9th Cir. 1998); *Cunningham*, 716 F.2d at 1467 n.27 (same).

  Plaintiff has alleged that the ESOP paid too much (more than adequate consideration).  In

the Complaint, Plaintiff set forth sufficient facts for each component of its claims to make a

prima facie case that the ERISA violations alleged have occurred.  As stated in the complaint and already described above, the ESOP purchased 100% of the company and its assets but did not receive all the rights and benefits of a sole owner of a company.  The ESOP was beholden to the various restrictions and obligations imposed on the ESOP by the terms of the first step of the transaction between the company and the sellers.

Accordingly, it is plausible that the purchase price was too high in light of the restrictions and obligations.  As referenced in paragraphs 23 and 24 of the Complaint, the trustee utilized three companies to conduct evaluations of the purchase price.  Plaintiff's legal allegation is the Wahlgren Valuation Analysis and BVA Fairness Opinion were deficient and did not consider, adequately consider or articulate the impact of the warrants, stock options, marketability, and control.  Defendants do not appear to attack the factual assertions Plaintiff makes to support that legal conclusion as contained in paragraph 24(i)-(iii).  Instead, Defendants argue that the facts add up to a different conclusion than that reached by Plaintiff.

Putting aside the Defendants' premature arguments about the ultimate merits of the case, the Plaintiff has plausibly asserted in the complaint that the ESOP overpaid for the stock.  The purchase price was premised on acquiring 100% of the company stock.  But, the ESOP only has unfettered access to 55% of the stock because of warrants and a stock option plan; owns stock that cannot be sold to anyone else; and has severe restrictions imposed by an IRA that amount to an inability to run the company on a day-to-day basis.  As the litigation progresses and discovery is underway, the parties will delve further into the nuances of the valuations and will employ experts to dissect and opine on the details of the transaction.  Nonetheless, there are sufficient

facts presented now that would allow the Court to draw an inference that the purchase price could have been too high.

### C. <u>Lubbock National Bank's Fiduciary Breach and Liability</u>

Plaintiff has met his burden of pleading plausible fiduciary breaches and liability for Defendant Lubbock National Bank.  As referenced in paragraphs 16, 22, and 23 of the Complaint, Defendant Lubbock National Bank acting through Christopher Robinson was charged with evaluating the transaction to ensure that the ESOP did not overpay for the stock and had access to the details of the transaction as well as the resources to retain third parties to aid Defendant Lubbock National Bank in fulfilling its fiduciary duties.  As referenced in paragraph 16 of the Complaint, Mr. Robinson had a background in ESOP work and, thus, the Court could draw an inference that he would have been able to ascertain that the details of the transaction were not being considered or sufficiently considered in the purchase price.   Thus, Defendant Lubbock National Bank was sophisticated enough to recognize that there were red flags indicating that the ESOP was overpaying, as referenced in paragraphs 24 and 25 of the Complaint.  The pled facts allow the Court to draw the additional inference that, by virtue of Lubbock National Bank's position as trustee, it could have halted or modified the transaction and, by failing to do so, allowed the ESOP to overpay for the stock, resulting in Plan losses.

### D. <u>Co-Fiduciary Liability</u>

Plaintiff has met his burden to plead plausible claims of co-fiduciary liability.  For co-fiduciary liability, "the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach."  *See Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) (internal

citations omitted).  The losses must also result from the fiduciary's failure to take reasonable

steps to remedy the co-fiduciary's breach.  *See Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98,

104-05 (2d Cir. 1998).

Defendants incorrectly posit that Plaintiff is alleging co-fiduciary liability based on

constructive knowledge; Plaintiff is alleging actual knowledge.  The Board of Directors and the

ESOP Committee were charged with overseeing the ESOP as referenced in paragraphs 6-13 of

the Complaint.  As stated in paragraphs 27-28 of the Complaint, the Defendants were on the

Board of the Directors and the ESOP Committee.  In carrying out their fiduciary duties, the

Defendants knew the details of the transaction through their participation in meetings and

telephone calls, and the receipt or generation of emails as well as the review of documents

reflecting the terms of the transaction and purchase price.  In paragraphs 27-28 of the Complaint,

Plaintiff stated that these individuals had the requisite knowledge, education, and experience to

recognize that the trustee was causing the ESOP to overpay for the stock.  Thus, Plaintiff has

asserted sufficient facts for the Court to draw the inference that these individuals understood how

the transaction was processed and therefore knew the Trustee was allowing the ESOP to overpay

in light of what the ESOP was receiving.  Further, it is plausible that the Defendants as

fiduciaries and with their respective positions on the Board of Directors and ESOP Committee

had the ability to take action to stop or remedy the breaches resulting from the overpayment but

failed to take the necessary steps to halt or modify the transaction.  As for Defendant Cactus

Feeders, Inc., it exercises its fiduciary duties through its Board of Directors and, thus, the Board's

13

knowledge is imputed to the company.  *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 905–06 (S.D. Tex. 2004).  Accordingly, the Court could draw an inference that these defendants have co-fiduciary liability.

## IV. PLAINTIFF HAS MET HIS PLEADING BURDEN AND IS ENTITLED TO PROCEED

### A.   Plaintiff Has Provided the Short and Plain Statement Required by Federal Rule of Civil Procedure 8(a)

In the Complaint, Plaintiff highlighted those facts that provide sufficient detail to show that Plaintiff's claims, allegations, and requests for relief have a factual basis, as the Federal Rules of Civil Procedure require.  The Complaint did not recite every factual detail contained within Defendants' exhibits.  Many of the pertinent facts require expert level explanations to provide the full and proper context for Plaintiff's allegations and requests for relief.  Indeed, given the complex nature of this matter, it would be unreasonable to expect any plaintiff to be able to reduce every fact and detail underlying Plaintiff's allegations to the short and plain statement that is required by Federal Rule of Civil Procedure 8(a).

Defendants have not raised a credible challenge to the plausibility of Plaintiff's claims. In is Motion, Defendants attached voluminous exhibits.  By doing so, Defendants went beyond the four corners of Plaintiff's Complaint and launched an effort to contradict and disprove the merits of Plaintiff's claims.  Defendants' ability to defend at this early stage in such great detail, however, only highlights that Plaintiff's Complaint fulfilled the obligations imposed by Federal Rule of Civil Procedure 8(a).  Defendants clearly understand and appreciate the heart of the controversy between the parties.

14

## B.  Defendants' Efforts to Attack the Merits is Premature

Defendants' use of exhibits under the guise that the documents were referenced in the Complaint is misguided.  Simply referencing documents in the Complaint is not enough to require the Court to consider those documents, and Defendants mistakenly represent otherwise. Context matters.   In isolation, the Defendants' exhibits present some but not all of the foundational documents necessary for a full adjudication of the merits of this case. Without the context of testimony and expert opinion, the exhibits to Defendants' Motion have no bearing on the merits.  Nor do the exhibits have any bearing at this early stage of the proceedings on whether the Plaintiff has meet his obligation to plead in conformance with Federal Rule of Civil Procedure 8(a)(2).

By attaching substantive documents to Defendants' Motion, Defendants have attempted to transform their motion to dismiss into a motion for summary judgment without acknowledging the attempt and while depriving Plaintiff of the opportunity to defend.  *See* Fed. R. Civ. P. 12(d). Defendants seek to persuade the Court to accept their exhibits by relying on *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000).  Their reliance is misplaced.

### i.  Courts in the Fifth Circuit are not Required to Consider Exhibits Attached to Motions to Dismiss

First, whether a court must consider documents attached to a motion to dismiss was not an issue in *Collins*.  Although the defendant in *Collins* attached documents to its motion, the plaintiff there did not object to the defendant doing so and the inclusion of the documents was not an issue on appeal.  Here, Plaintiff does object to the consideration of the documents.

15

Defendants' exhibits, without more explanation and other documents not yet provided, do not adequately reflect the deficiencies that resulted in the ERISA violations.

Second, Defendants are relying on dicta.  The *Collins* court does not hold that courts in the Fifth Circuit are required to consider exhibits to motions to dismiss.  Even though the *Collins* court references circuits that allow exhibits to motions to dismiss, it does not establish that any court in the Fifth Circuit is required to do so.

Furthermore, unlike the cases referenced in the *Collins* cases, Plaintiff's claims in the instant matter focus on the breaches committed by the trustee, not the content of the documents themselves.  The trustee's fiduciary obligations are independent of any particular documents though the documents provide some of the information presented to the trustee and the other defendants.  Also, Plaintiff did not integrate or plead the contents of the documents that Defendants attached as exhibits.  Plaintiff referenced the documents but only for the purpose of establishing that there is evidence that support the claims and requests for relief that Plaintiff made in the Complaint.

In this way, Plaintiff's Complaint is more like the plaintiffs' complaint in *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 68 (2d Cir. 2008).  The *Sahu* court found that the documents referenced in the plaintiffs' complaint were not integral to plaintiffs' short and plain statement because the references "seem to have been used by the plaintiffs largely for the purpose of indicating that evidence existed to support the complaint's assertions."  *See id.* The *Sahu* court also acknowledged that, "[i]n light of subsequent Supreme Court authority, we think this material is best viewed as tending to establish that the complaint's factual assertions are 'plausible.'" *See id.*

### ii.   Expert Testimony is Needed to Consider the Merits of the Case

Plaintiff's allegations, and presumably Defendants' defenses, will require expert testimony.  It would be both premature and unfair to require Plaintiff to proffer expert testimony or opinion when discovery has not yet begun.[3]  Defendants attach documents from individuals they have identified as experts, who were employed by the trustee during the December 22, 2010 transaction, as exhibits.  Although those documents contain many facts that will bear on the ultimate issues to be decided, Plaintiff is not required to submit expert rebuttal reports in order to file a complaint.  Plaintiff is not required to marshal all of its evidence at the start of the litigation before there has been an opportunity to conduct written discovery, depose the Defendants' experts and determine the bases of their work, depose the Defendants and confirm the bases for their decisions and work, and uncover any additional facts that could be necessary for a thorough and comprehensive expert report from a testifying expert.  Plaintiff would be subject to an unfair pleading burden were it required to respond to Defendants' exhibits before he could undertake the necessary discovery.

---

[3]     Although the Employee Benefits and Security Administration (EBSA) conducted an investigation, Plaintiff is entitled to conduct full discovery in the litigation.  The inspection phase and the enforcement phase "have long been recognized as separate and distinct proceedings serving different functions." *Genuine Parts Co. v. FTC*, 445 F. 2d 1382, 1387 (5th Cir. 1971).  As the Supreme Court stated in *Oklahoma Press Publishing Co. v. Walling*, the purpose of a regulatory agency's inspection "is to discover and produce evidence not to prove a pending charge or complaint, but upon which to make one if, in the (agency's) judgment, the facts thus discovered should justify doing so."  327 U.S. 186, 201 (1946).

### iii.  Plaintiff Would Require Discovery to Respond to Defendants' Exhibits

A critical component of Federal Rule of Civil Procedure 12(d) is that: "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.* If Defendant is able to have the Court consider the information in their exhibits that are outside of the pleading, Plaintiff in the interest of justice must be permitted to respond to Defendants' motion as a motion for summary judgment with the concomitant burdens for summary judgment triggered.[4]  Therefore, if Plaintiff is required to respond to the exhibits, Plaintiff must be given an opportunity to respond in full after the close of discovery.

---

[4]      Plaintiff would require further discovery to fully develop and explain the areas where there is a genuine issue of dispute between the parties.  Under Federal Rule of Civil Procedure 56(c), summary judgment is only warranted where the evidence shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).  Factual disputes that might affect resolution of the claim, under applicable substantive law, will preclude summary judgment.  *See Anderson*, 477 U.S. at 247-248.  Where the nonmoving party will bear the burden of proof at trial, there is no requirement that the moving party negate the opponent's claim.  *Celotex Corp.*, 477 U.S. at 324.  Instead, the nonmoving party must simply show "that there is a genuine issue for trial."  *Id.*  A genuine issue of fact means an issue which must be decided by the trier of fact.  *Id.*

## V.  CONCLUSION

Plaintiff's Complaint contains facts supporting each component of its prima facie case for each Defendant.  There are more than sufficient facts pled in the Complaint to support a finding that each of Plaintiff's claims is plausible.  Plaintiff has met his burden and Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

M. PATRICIA SMITH
Solicitor of Labor

JAMES E. CULP
Regional Solicitor

ROBERT A. GOLDBERG
Counsel for ERISA

/s/ TD Davila
TINA D. DAVILA
Trial Attorney-in-Charge
Texas Bar No. 24027549
Email:  davila.tina.d@dol.gov

KRISTINA T. HARRELL
Senior Trial Attorney
Email:  harrell.kristina@dol.gov

U.S. Department of Labor
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, TX  75202
(972) 850-3100
(972) 850-3101-fax

Attorneys for Plaintiff.

## Certificate of Service

I hereby certify that on the 20th day of December, 2016, a true and correct copy of the foregoing *Plaintiff's Response to Defendants' Motion to Dismiss and Brief in Support* was served upon the attorney of record of all parties or upon all parties to the above entitled and numbered cause through the ECF system to:

> Theodore M. Becker
> Drinker, Biddle & Reath LLP
> 191 N. Wacker Drive, Suite 3700
> Chicago, Illinois 60606

> /s/ TD Davila
> _____
> TINA D. DAVILA
> Senior Trial Attorney

20